CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent, vs. ROCK COUNTY SUGAR COMPANY, Appellant.

*January 12—February 22, 1916.*

*Interstate commerce: Regulation: Constitutional law: Federal authority paramount: Conflicting state statutes: Railroads: Demurrage: "Additional free time" for unloading cars: Statutes: Construction: Partial or total invalidity: Burden on interstate commerce.*

1. The federal government is the paramount authority in the regulation of interstate commerce; the laws of Congress on that subject supersede and override all state statutes conflicting therewith; and where the federal government, acting through its con-

stitutional agencies, has fully covered the subject by regulations of its own, there is usually no room for further state regulation.

2. Sec. 1797—10m, Stats., providing that the consignee of carload freight "shall be allowed for unloading without car service or demurrage being assessed, additional free time equivalent to the number of days in excess of seventy-five miles per day of twenty-four hours consumed by the common carrier in transporting said freight from point of shipment to point of destination," is invalid as to interstate shipments for the reason that it attempts to add variable time, depending upon length of haul and time occupied in transit, to the time for unloading cars fixed in the demurrage regulations filed with and approved by the interstate commerce commission pursuant to the federal act to regulate commerce.

3. Mere general words in a state statute will ordinarily be restrained so as to include only such subjects as the legislature had jurisdiction to include; but where the plain meaning of the statute is that it shall apply equally to a subject over which the legislature has jurisdiction and one over which it has no jurisdiction, and such subjects are so interrelated that it is reasonably apparent that the regulation of one alone in the manner and to the extent specified in the statute would not have been attempted, then the statute, being invalid in its main purpose, must be held wholly nugatory.

4. Under the foregoing rule, in view of the interrelation of state and interstate freights and the impracticability of having different periods of "free time" for unloading, sec. 1797—10m, Stats., is *held* wholly void, not only as to interstate commerce but as to local or state commerce as well.

[5. Whether, if said section were upheld as to local or state commerce, it would impose a burden on interstate commerce by its tendency to expedite the movement of intrastate freight at the expense of interstate freight, not decided.]

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Jeffris, Mouat, Oestreich & Avery,* and oral argument by *O. A. Oestreich.*

For the respondent there was a brief by *Lines, Spooner, Ellis & Quarles,* and oral argument by *Louis Quarles.*

TIMLIN, J. This action was brought to recover $2,720 demurrage charges accruing on local or state shipments and

$321 of like charges upon interstate shipments to the defendant. The plaintiff had judgment on both demands for $335.68 damages and costs. An appeal by the plaintiff from this judgment was withdrawn and the case is heard on the appeal by defendant. The only question raised by that appeal is whether the statute, sec. 1797—10m, is valid. If invalid, the judgment should not be disturbed. If valid, the judgment must be reversed. That statute reads as follows:

"1. In all cases where common carriers move carload freight from point of shipment to point of destination at an average rate of less than seventy-five miles for each twenty-four hours, consignee shall be allowed for unloading without car service or demurrage being assessed, additional free time equivalent to the number of days in excess of seventy-five miles per day of twenty-four hours consumed by the common carrier in transporting said freight from point of shipment to point of destination.

"2. For the purpose of determining whether or not the consignee shall be entitled to additional free time as provided for in subsection 1 of this section, the time consumed by the common carrier in transporting the freight shall begin to run at twelve o'clock midnight of the day on which the freight is delivered to the common carrier at point of shipment and shall end at twelve o'clock midnight of the day on which the car is placed at a point accessible to the consignee for the purpose of unloading.

"3. The provisions of this section shall apply to carload freight transported by one or more common carriers from point of shipment to point of destination. Provided, that whenever any railroad company shall notify the railroad commission of Wisconsin that conditions have arisen on its line of railroad over which it has no control and is [not?] liable for, stating in said notification the facts of the case, the railroad commission may, if it deems the facts such as to warrant, issue its order suspending the operation of this section not to exceed thirty days, but may continue such order from time to time as the conditions may warrant. The consignee must use due and reasonable diligence in unloading all cars,

(

and any failure to do so shall subject the consignee to a like supervision by the railroad commission. It is further provided that when conditions warrant the railroad commission shall have power to promulgate reasonable and just rules and regulations to enforce or modify the provisions of this section."

The statute purports to include all cases of shipment, whether local or interstate; it adds variable time, depending upon length of haul and time occupied in transit, to the time for unloading cars fixed by rule of the plaintiff approved by the Wisconsin railroad commission and by the interstate commerce commission; it authorizes the railroad commission of Wisconsin to suspend the operation of that section of the statute as to the transportation of carload freight by one or more common carriers from point of shipment to point of destination, and it contains other requirements not necessary to be considered.

From the viewpoint of the economist this statute is quite absurd. Delay in the transmission of freight cars, which is an evil injuriously affecting the shipper, the consignee, and the public, is to be corrected by retaliatory delay. Public interest demands that cars be actively engaged and readily obtainable and that the carrier be not required to purchase and use a number of cars disproportionate to the business done by it, for that must ultimately result in advanced rates of carriage on account of greater capital investment. Similar to this statute, only more obvious in its absurdity, would be a law to the effect that if one killed my cow I might kill one of his. Such a law might have some tendency to prevent him killing my cow, but the net result would be that the collective wealth is diminished by the value of two cows and the supply of milk to the public diminished correspondingly. The retaliatory features of this act, by which it appears that if the carrier delay the consignee and keep the car and its contents out of commerce for a time the consignee will have

378     SUPREME COURT OF WISCONSIN.     [FEB.

Chicago, M. & St. P. R. Co. v. Rock County S. Co. 162 Wis. 374.

the right to delay the carrier and keep the car out of commerce for another time, would have as against the carrier some preventive tendency, but the public would be the loser, and there are other more effective and less wasteful modes of prevention.

Courts may not refuse to enforce a statute merely because it offends against economic principles, consequently in reviewing the decision of the learned circuit court refusing to enforce the statute we must remove the subject from the testing chamber of the "dismal science" and into the "gladsome light of jurisprudence." Here, if we find the statute in conflict with a paramount rule of law, we vindicate and uphold the latter by refusing to uphold the former, and this necessary result is sometimes loosely spoken of as "declaring the statute unconstitutional." The federal government is the paramount authority in the regulation of interstate commerce, and the laws of Congress on that subject supersede and override all state statutes conflicting therewith. Also where the federal government, acting through its constitutional agencies, has fully covered the subject by regulations of its own, there is usually no room for further state regulation.

Sec. 1 of the act to regulate commerce, approved February 4, 1887, as amended by sec. 7, ch. 309, 36 U. S. Stats. at Large, 539, provides that the term "transportation" shall include all services in connection with the receipt, delivery, and handling of property transmitted. The carrier is required to establish, observe, and enforce just and reasonable regulations regarding the delivery of property, and these regulations filed with the interstate commerce commission are lawful until set aside. Further, the demurrage rules of the American Railway Association were, by the interstate commerce commission bulletin of June 3, 1912, approved subject to the right to examine and disapprove later on complaint made. *Mich. Cent. R. Co. v. Mich. R. R. Comm.* 183 Mich. 6, 148 N. W. 800; Conference Ruling No. 223, Bulletin No. 5,

Interstate Comm. Comm.; Barnes, Interstate Transp. p. 447; *Berwind-White C. M. Co. v. C. & E. R. Co.* 235 U. S. 371, 35 Sup. Ct. 131; *Pennsylvania Co. v. U. S.* 236 U. S. 351, 35 Sup. Ct. 370; *Texas & P. R. Co. v. Interstate Comm. Comm.* 162 U. S. 197, 16 Sup. Ct. 666; *Chicago, R. I. & P. R. Co. v. Hardwick F. E. Co.* 226 U. S. 426, 33 Sup. Ct. 174; *St. Louis, I. M. & S. R. Co. v. Edwards,* 227 U. S. 265, 33 Sup. Ct. 302; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 117 N. W. 686, 19 L. R. A. N. s. 326.

The federal act to regulate commerce requires that carriers shall publish, post, and file all terminal charges which in any wise change, affect, or determine the value of the services rendered to the shipper or consignee, and all such charges become a part of the "rates and charges" which the carrier shall require, demand, collect, or retain. Such terminal charges include demurrage charges, which are not within the jurisdiction of state authorities. *Peale v. Central R. Co. of N. J.* 18 Int. Comm. Comm. Rep. 25. The very words of the statute, "additional free time," must, with reference to interstate shipments, be taken to mean additional to that specified in the schedules on file with the interstate commerce commission. Congress has acted in the matter of regulating this feature of interstate commerce and that action excludes further or additional regulation covering the same subject by the state legislature. *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 117 N. W. 686. This regulation, by adding "additional free time," conflicts with the regulation made as described pursuant to the laws of the United States. *State v. C., M. & St. P. R. Co., supra.* The question then arises whether the legislature intended that this act should be in force as to local or state commerce only. The statute is manifestly aimed at delays at the point of shipment, at transfer points between that and the destination of the freight, and delays in large yards where the freight is delivered to be afterwards distributed on the various sidetracks to the several

consignees. It therefore affects interstate commerce principally. The actual rate of travel between the point of shipment and point of destination is not intended to be accelerated by this law, because no railroad train which keeps moving travels less than seventy-five miles in twenty-four hours. The delays by snow blockades or washouts may be considered negligible. One effect of upholding this law as to local or state commerce would be to place a premium upon expediting from the points of shipment, transfer points, or from the large yards to the consignee intrastate freight as against interstate freight. The railroad would naturally deliver the state or local freight first so as to shorten the time for the consignee to hold the car without demurrage charges. Another effect which the law would have would be to induce the consignee, after delivery, to unload his interstate freight first. Further "free time" for unloading means more difficulty in obtaining cars for interstate as well as for local transportation. State and interstate freight are carried in different cars of the same train and sometimes in the same car. While the present mode of switching cars obtains, local freight must be moved in order to distribute interstate freight, and *vice versa.* The interrelation of state and interstate freights, the impracticability of having different spaces of "free time" for unloading, taken in connection with the general words in the act, tend to show that it was not intended that the act might be upheld as to state or local freight if invalid as to interstate freight. There is nothing in the words of the act, or in the subject to which the act applies, which would authorize us to hold that there is a separable portion of the act applicable to local or state commerce which could be upheld notwithstanding the invalidity of the act in general.

A comparison of the decision in *Trade-Mark Cases,* 100 U. S. 82, and *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 28, 20 Sup. Ct. 518, with the distinction noted in the last mentioned case makes this point of law perfectly clear. Mere

general words in a statute literally including cases over which the legislature had no jurisdiction may be limited to cases where the legislature had power to act if that intention of the legislature can be derived from a consideration of other language in the statute, its subject matter, the evils intended to be remedied thereby, and the practicability of separating the invalid from the valid portions of the statute. Mere general words will ordinarily be restrained so as to include only such subjects as the state legislature had jurisdiction to include. See Revisor's Notes to sub. 10, sec. 1770b, Stats. All statutes are in some degree limited by this consideration. It is not necessary to specify in a state statute that it is limited to persons, property, or transactions within the state. But where the plain meaning of the statute is that it shall apply to these matters over which the state legislature has jurisdiction and equally to these matters over which the state legislature has no jurisdiction, and these subjects are so interrelated that it is reasonably apparent that the legislature would not have attempted the regulation of one alone in the manner and to the extent specified in the statute, then the statute, being invalid in its main purpose, must be held wholly nugatory. *Waters-Pierce Oil Co. v. Texas, supra; Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 78, 89 N. W. 904; *Elwell v. Adder M. Co.* 136 Wis. 82, 116 N. W. 882, and cases cited; *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, 284, 97 N. W. 940; *Security Mut. L. Ins. Co. v. Prewitt,* 202 U. S. 246, 249, 26 Sup. Ct. 619; *Sargent v. Rutland R. Co.* 86 Vt. 328, 85 Atl. 654.

It might be that this law, if upheld as to local or state commerce, would impose a burden on interstate commerce by its tendency to expedite the movement of intrastate freight at the expense of interstate freight, but we do not find it necessary to decide that point. We prefer to rest this decision on the ground that the statute is invalid as to interstate commerce and that the provisions relative to local or state com-

merce, covered by the same general words, included in the same provisions, and subject to the same duties do not, taking into consideration the words of the statute and the subject matter of regulation, constitute a separate or severable portion of the statute which might survive.

Other points of invalidity alleged need not be noticed. It follows that the judgment of the circuit court should be affirmed.

*By the Court.*—Judgment affirmed.

For the appellant there was a brief by *Jeffris, Mouat, Oestreich & Avery,* and oral argument by *O. A. Oestreich.*

For the respondent there was a brief by *Lines, Spooner, Ellis & Quarles,* and oral argument by *Louis Quarles.*